**Application of LEVIS.**
Civil No. 1661.

District Court, D. Maryland.
Sept. 4, 1942.

Aaron I. Levis, petitioner, pro se.

Bernard J. Flynn, U. S. Atty., and Thomas J. Kenney, Asst. U. S. Atty., both of Baltimore, Md., for respondent.

WILLIAM C. COLEMAN, District Judge.

The petitioner, Aaron I. Levis, was naturalized by this Court on May 25, 1931. By his present petition, he now seeks to have this Court change the date of his birth from May 11, 1905, as now appearing on the naturalization records of this Court, to May 11, 1900. The Government has filed an answer denying petitioner's right to such amendment.

The following are the material and undisputed facts as disclosed by the petition and answer, and also by the testimony of petitioner given in the course of the hearing upon his petition:

Petitioner was born in Pilvishki, Lithuania. In 1914, during the early part of the last World War, this town was occu-

pied and pillaged by German forces. Such local records as may have existed were destroyed. Following the German occupation, it was customary for parents of minors, such as petitioner, to represent the ages of their boys as being less than they actually were, for the purpose of preventing these children being conscripted to work for the German authorities.

In 1921 petitioner came to the United States, settled in Jackson, Tennessee, where he was educated in high school and the University of Tennessee, from which he received both the Bachelor's of Arts and Doctor's degree, and he became a licensed physician in 1930. While obtaining his education in Tennessee, petitioner gave the date of his birth as May 11, 1905, which he knew to be incorrect, but he was not certain, because of conditions in Lithuania as above set forth, within a year or two of what his exact age was, and so continued to us the erroneous date of birth throughout his residence in Tennessee.

After leaving Tennessee, petitioner served an internship in hospitals in Baltimore, and having thus acquired a residence in Maryland, he instituted naturalization proceedings in this District, in connection with which he gave as the date of his birth May 11, 1905, still being uncertain as to the exact date, but he was not required to verify it. Some time thereafter but prior to the 1940 United States Census, he wrote to his parents, who had remained in Lithuania, and obtained their verification of this earlier date which he gave to the census takers. Petitioner is one of twelve children.

Petitioner has recently made application for a commission in the Medical Corps, United States Army, giving his date of birth as May 11, 1900. Upon exhibiting his naturalization certificate to the Army as required to do in connection with his application for a commission, the discrepancy was noted and petitioner's application for an Army commission has been tabled pending further proof as to which one of the two dates is, in fact, the correct date of petitioner's birth.

Petitioner has annexed to his petition a number of affidavits of several persons, relatives and others, some now living in the United States, and who were likewise living here at the time he applied for citizenship. All of these affiants state that they were living in Lithuania at the time of the petitioner's birth which they swear to have been on May 11, 1900, and that they are personally familiar with the time and circumstances of same. Petitioner carries life insurance and originally gave May 11, 1905, as his date of birth to his insurer, but has since acquainted his insurer with the error, which will increase very substantially his insurance premiums.

For some years petitioner has practised medicine in Woodmere, Long Island, New York, and also in New York City, and has filed supporting affidavits of the Secretary of the Medical Society of the State of New York and of the Nassau County Medical Society, respectively, to the effect that petitioner is a member in good standing of both of these professional associations, and that, by virtue of membership in the first named Society, petitioner became a member also of the American Medical Association.

Opposition of the Government to the granting to petitioner the relief for which he asks appears to be upon two grounds: (1) Because petitioner deliberately and knowingly incorrectly stated his date of birth in connection with his naturalization proceedings; and (2) this Court is without jurisdiction in any event to correct naturalization records after the term of court in which such records were made has expired, and when the alleged error is not the result of anything that the court itself has done, but is a mistake of the petitioner himself.

■ Of course, if there were substance to the first of these grounds asserted by the Government, the petition should not merely be denied, but petitioner's naturalization would be subject to revocation because of fraud and illegally procured. Johannessen v. United States, 225 U.S. 227, 32 S.Ct. 613, 56 L.Ed. 1066. In effect, the Government charges that such was the case, yet, at the same time, the Government has made no suggestion that it has considered, or intends to consider taking any steps for such cancellation.

■ We do not think that the evidence, when correctly and fairly interpreted, supports the Government's position. It is true petitioner admits that he knew the date which he gave as the date of his birth was not accurate, and it is further admitted that, with no great effort, both while he was receiving his general and professional education in this country as well as at the time he applied for American citizenship, he probably could have ascertained, with

the same degree of certainty as is now apparent, the correct date of his birth. However, petitioner was undoubtedly the victim of unusual and distressing circumstances during his boyhood as a result of the German occupation of Lithuania. It was not unnatural for him to have assumed that verification of the exact date of his birth was difficult, if not impossible, and, therefore, to have continued a practice which his parents had set in motion, especially since, in accordance with the usual procedure, petitioner was not asked by the Naturalizational Officials, at the time he filed his application, to support his statement as to his age by any proof, documentary or otherwise.

For aught that appears, no harm has resulted from what we are inclined to term petitioner's carelessness rather than wilful misrepresentation—certainly this is true insofar as the Federal Government is concerned, although of course, one might make interesting speculations as to the effect upon petitioner's course of education had his correct age been set down originally when he entered high school in Tennessee. Nor does the closest scrutiny give any support to a suggestion that the real object of the present petition is to escape the effects of the Selective Training and Service Act, 50 U.S.C.A.Appendix § 301 et seq., or to place petitioner in a more advantageous position under the provisions of the Draft than would be the case if his present age be established as forty-two in place of thirty-seven; or that petitioner is attempting improperly to obtain any preferment from the Army in the matter of a commission on the basis of age. Whether the earlier or later date of birth be adopted, petitioner is in either case subject to the provisions of the Selective Training and Service Act. The fact that if he can, to the satisfaction of the Army, establish that he is forty-two years of age in place of thirty-seven, he may, by volunteering, as he is doing, secure a commission of higher rank and pay, is a matter with which this Court need not concern itself, once we are fully satisfied that petitioner is entitled to have the records of this Court amended, so as to show that he was in fact born on the earlier date. The affidavits of those claiming to be personally familiar with the circumstances of his birth and who have therefore sworn that he was born on May 11, 1900, stand unimpeached. They may not be the best evidence, but they substantiate petitioner's own testimony which, standing alone, has the mark of truth and sincerity.

We believe that the Government's second ground of opposition to granting petitioner the relief which he seeks, is equally without merit. In the first place, Rule 60(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that: "Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." Old Equity Rule 19 was substantially the same. Rule 6(c) of the present Rules of Civil Procedure provides that: "The period of time provided for the doing of any act or the taking of any proceeding is not affected or limited by the expiration of a term of court. The expiration of a term of court in no way affects the power of a court to do any act or to take any proceeding in any civil action which has been pending before it." And Rule 81(a) (2) makes the Rules just quoted directly applicable to naturalization proceedings in that it provides that those Rules are applicable to such proceedings except to the extent that the practice therein is otherwise defined by statute. Nor does the fact that the court record now sought to be amended was made long before the effective date (September 16, 1938) of the present Rules of Civil Procedure prevent application of those Rules, because, by virtue of Rule 86, these Rules may be given retroactive effect, which in fact is no different from what might have been done any time prior to the effective date of the new Rules, upon presentation of satisfactory proof, because there was no court rule, local to this District, prohibiting such amendment, and as just pointed out, old Equity Rule 19 expressly permitted it. A proceeding for naturalization is essentially a judicial proceeding. Tutun v. United States, 270 U.S. 568, 46 S.Ct. 425, 70 L.Ed. 738.

Once we remove from a case any question of fraud, misrepresentation or improper motive, it seems common sense to say that there is no sound ground for making a distinction between the right of a court, under the Rules just referred to, to alter its records for the purpose of correcting a mistaken entry when that entry has been made at the instance of the court

itself, and when made as the result of the mistake of a party to the proceeding, provided clear and convincing proof is presented. No one questions the right and duty in the former case. Why should it be questioned in the latter? The underlying purpose in each case is the same, namely, to have the permanent records of the court disclose the actual facts.

There is little authority on the precise point now before us. The most recent reported case is In re Awn's Petition, 36 F. Supp. 32, a decision of the District Court for the Eastern District of New York, decided December 14, 1940, which appears not to have been appealed. There, the matter arose on a motion for an order directing the Clerk of the District Court to amend a declaration of intention to become a citizen, by changing the date of petitioner's birth to show that the petitioner was thirty-six years, instead of thirty-four years old. Judge Campbell denied the motion, on the ground that he was controlled by the decision of the Circuit Court of Appeals for the Second Circuit in United States v. Vogel, 262 F. 262, in which, following considerable diversity and confusion in the opinions in the New York District Courts, the appellate court decided that District Courts had no right to order an amendment of a declaration of intention involving an attempted change of name of the former sovereign of the alien. Judge Campbell also rested his decision upon the ground of insufficient proof as to petitioner's actual age and upon the fact that to have allowed the amendment with respect to petitioner's date of birth, would have exempted him from the Selective Training and Service Act.

Prior to the decision of Judge Campbell in the Awn case, supra, Judge Caffey, in the Southern District of New York, had decided, in Petition of Cohen, 53 F.2d 865, also relying upon United States v. Vogel, supra, that, while a court may correct its records for clerical error by one of its officials, if there is no such clerical error, the court, after expiration of the term, cannot correct its records made in a naturalization proceeding five years before, where the error alleged was made by petitioner himself respecting his age. In his declaration of intention, executed in 1922, petitioner had stated that he was born in 1901; he was admitted to citizenship in 1926 on such declaration, but being about to take a State Civil Service examination, he moved for an order to amend the naturalization records, so as to show he was born in 1904. Apparently, there was no question but that 1904 was the correct date, but Judge Caffey refused to allow the correction to be made. This case appears not to have been appealed. The Government relies primarily upon it.

In 1918, in Re Hennig, 248 F. 990, Judge Chatfield, in the Eastern District of New York, had decided that where there was an unintentional misstatement as to the year of birth in a certificate of naturalization, such was subject to correction at the instance of the petitioner. However, this decision was rendered prior to United States v. Vogel, supra, and while it is not referred to in the latter case, as Judge Caffey stated in the Petition of Cohen, supra, 53 F.2d page 867: "It may well be questioned whether the latter [the Vogel case] does not in effect overrule the former [the Hennig case]."

While the question of whether a naturalization record should be amended to the extent of changing the name of the former sovereign, allegiance to whom the applicant has abjured, may be said to be a more substantial question and has been raised in several cases in different Districts, we are not called upon to pass upon this question. Parenthetically, it may also be pointed out that such importance as may, at one time, have attached to this question, has been lessened by the fact that under the new Nationality Code the required oath of renunciation is not required to name the particular foreign state or sovereignty. See 8 U.S.C.A. § 735. However, it is worthy of note that in Re Denny, 240 F. 845, a decision by Judge Learned Hand in the Southern District of New York, in 1917, it was held that such a mistake, when made inadvertently, could be corrected. In the opinion we find the following pertinent language (240 F. page 847): "What part of these prescribed preliminary formalities shall be taken as jurisdictional, and what, as regulative, is entirely a fluid matter, depending upon the importance ascribed to anyone of them by the court. It is possible to treat literal compliance with every particular provision as an absolute condition sine qua non of any hearing, but such a meticulous temper does not suit a court. There is, indeed, no difference in the formal expression of the statute regarding any one of them which can serve as a distinction. No one,

I suppose, would insist that a mistake in 'declaration of intention' as to the age, occupation, personal description, place of birth, date of arrival, name of vessel, and present place of residence in the United States would be beyond correction. No one would insist that a mistake as to similar particulars in the petition was fatal to the petition; yet there is not a particle of warrant in the statute for assuming that these particulars go less to the jurisdiction than the one in question. Obviously, unless the rule is that every statement is vital to the whole, the court must determine from their character, which statements Congress intended to be crucial, and this must depend upon the substantive significance of the statement itself." While In re Denny was overruled by United States v. Vogel, supra, this Court is not bound to accept the view that is now controlling in the Second Circuit—in the absence of a like ruling by the Supreme Court or by the Circuit Court of Appeals for the Fourth Circuit—assuming that it is to be considered as prohibiting such an amendment as is sought in the present case; and, for the reasons given, we feel constrained to adopt the opposite view and to permit the amendment in the present case.

An order will be signed in accordance with this opinion.